UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL FEDERATION OF THE BLIND, INC. *et al* </br>  </br> Plaintiffs, </br>  </br> v. </br>  </br> MARGARET SPELLINGS, SECRETARY, U.S. DEPARTMENT OF EDUCATION, *et al*. </br> Defendants | Civil Action No. 05-1839 (CKK) |

## DEFENDANTS' MOTION TO DISMISS

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6), Defendants, through counsel, the United States Attorney for the District of Columbia, respectfully move to dismiss Plaintiff's Complaint inasmuch as Plaintiff lacks standing to advance their claims. In further support of this motion, Defendants respectfully refer the Court to the attached memorandum of points and authorities and proposed order.

                                                  Respectfully submitted,

                                                  KENNETH L. WAINSTEIN, D.C. Bar #451058
                                                  United States Attorney

                                                  R. CRAIG LAWRENCE, D.C. Bar #171538
                                                  Assistant United States Attorney

                                                  OLIVER W. McDANIEL
                                                  Assistant United States Attorney

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| NATIONAL FEDERATION OF THE BLIND, INC. *et al* | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 05-1839  (CKK) |
| MARGARET SPELLINGS, SECRETARY, U.S. DEPARTMENT OF EDUCATION, *et al*. | ) ) ) ) | |
| Defendants | ) ) | |

**DEFENDANTS' MEMORANDUM OF POINTS
IN SIPPORT OF THEIR MOTION TO DISMISS**

The Defendants, Margaret Spellings, Secretary, U.S. Department of Education, and Edward Anthony, Acting Commissioner, Rehabilitation Services Administration ("RSA"), through counsel, the United States Attorney for the District of Columbia, respectfully moves pursuant to Fed R. Civ. P. 12(b)(1) to dismiss the complaint filed by Plaintiffs, National Federation of the Blind ("NFB"), National Association of Blind Merchants ("NABM"), Billie Ruth Schlank, Donald J. Morris and Kevan Worley, in this case for lack of jurisdiction and failure to state an actionable claim. The court should dismiss this complaint with prejudice because Plaintiffs have no private right of action, have suffered no harm and thus lack standing to advance this action.

**I. NATURE OF THE SUIT**

**The Complaint**

By a nine-page complaint, filed on September 16, 2005, predicating jurisdiction on 28 U.S.C. §§ 1331 and 1361, Plaintiffs seek a declaration that Defendants are in violation of the staffing requirements of the Randolph-Sheppard Act (hereinafter "the R-S Act") and mandamus relief

requiring Defendants to comply with the staffing requirements of Section 208(a) of the Randolph-Sheppard Act Amendments of 1974, 29 U.S.C. § 702 (Note). Compl. at ¶¶ 1-2 and at 8-9.  Plaintiffs allege, *inter alia*, that the purpose of the NFB and its affiliate, the NABM, is "to promote the general welfare of the blind by (1) assisting the blind in their efforts to integrate themselves into society on terms of equality and (2) removing barriers and changing social attitudes, stereotypes and mistaken beliefs held by sighted and blind persons concerning the limitations created by blindness that result in the denial of opportunity to blind persons in virtually every sphere of life." Compl. at ¶ 4.

Plaintiffs contend that Congress' findings in 1974, approximately 32 years ago, that the "Randolph-Sheppard Program 'has not developed, and has not been sustained, in the manner and spirit in which the Congress intended" and its enactment requiring "'stronger administration and oversight **in the Federal office carrying out the program**'" and, specifically, the performance of certain enumerated duties, to be performed by "ten additional full-time personnel (or their equivalent) to be assigned to the Office of the Blind and Visually Handicapped (currently referred to as Blind and Visually Impaired Division)," compl. at ¶¶ 15-16 (emphasis added), now requires the Department of Education ("EDD") not only to continue to assign a minimum of thirteen employees to implement the Randolph-Sheppard Program, but also to maintain the Blind and Visually Impaired Division and its resident agency, the RSA, notwithstanding EDD's decision to shut down the RSA.

Plaintiffs do concede that the Randolph-Sheppard program is not being abolished but "will be assigned to the newly created Training and Service Programs Division . . .." Compl. at ¶ 20. They also admit that the R-S Act gives EDD discretion to "periodically [evaluate] the program and [take] **such other steps as may be necessary or desirable to carry out the program** (20 U.S.C.

§ 107a(a)(6)) . . ..." Id. at ¶ 15 (emphasis added). Given the timing of the Complaint, and its wording, Plaintiffs engage in what can only be described as speculation in alleging that "[w]ithout mandamus relief, the individual Randolph-Sheppard vendor Plaintiffs and the organizational Plaintiffs will not receive the full benefit of the programs and services intended by Congress in amending the Randolph-Sheppard Act." Id. at ¶ 21.

## II.  DISCUSSION

**A.    Introduction**

Plaintiffs challenge the alleged failure of the RSA, in the Office of Special Education and Rehabilitative Services (OSERS), EDD, to implement the Congressional directive found in section 208(a) of the Randolph-Sheppard Act Amendments of 1974 (the R-S Act), 29 U.S.C. 702 (Note). This provision, in isolation, states that the Secretary of Education "is directed to assign" to the RSA's Office for the Blind and Visually Handicapped ten full-time personnel (or their equivalent), five of whom shall be supportive personnel, to carry out duties related to the administration of the R-S Act.  However, Plaintiffs fail to recognize that this provision was enacted in the context of a statutory scheme that continues to accord discretion to the Secretary to take such other steps as may be necessary or desirable and a scheme that provides an enforcement scheme for the claims of blind vendors, but no enforcement scheme for the type of claim Plaintiffs advance in this action.  Given this scheme, it is clear that Congress did not afford a private right of action to enforce this disputed provision of the R-S Act.  Further, Plaintiffs clearly lack standing to advance this suit because they cannot establish harm to them or their interests from the alleged violation of the single provision of the R-S Act.

**B.     Standard of Review**

In assessing a motion to dismiss under Rule 12(b)(6), Plaintiff's factual allegations must be presumed true and should be liberally construed in their favor. See Phillips v. Bureau of Prisons, 591 F.2d 966, 968 (D.C. Cir. 1979); Alexander v. FBI, 971 F. Supp. 603, 607 (D.D.C. 1997). Plaintiffs must be given every favorable inference that may be drawn from their allegations of fact. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). The complaint should be dismissed if it appears beyond doubt that no set of facts proffered in support of plaintiff's claim would entitle him to relief. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Haynesworth v. Miller, 820 F.2d 1245, 1254 (D.C. Cir.1987).  However, "the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by the facts alleged in the complaint, nor must the Court accept the plaintiff[s'] legal conclusions." Akintomide v. United States, 99-MS-0055 (PLF), 2000 WL 1693739, at *1 (D.D.C. Oct. 31, 2000) (citing National Treasury Employees Union v. United States, 101 F.3d 1423, 1430 (D.C. Cir. 1996); Kowal v. MCI Communication Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994)). Application of this standard in this case requires its dismissal for the reasons described below.[1]

---

[1] The Court may rely on an attachment to the complaint without converting a motion to dismiss into one for summary judgment. See Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1220 (1st Cir.1996) (ruling that a court may consider a "document integral to or explicitly relied upon in the complaint . . . without converting the motion into one for summary judgment."). Similarly, the Court may properly take judicial notice of matters in prior cases. E.g., Baker v. Henderson, 150 F. Supp.2d 17, 19 n.1 (D.D.C. 2001) ("[i]n determining whether a complaint fails to state a claim, the court may . . . take judicial notice of matters of a general public nature, such as court records, without converting the motion to dismiss into one for summary judgment."); Himmelman v. MCI Communications,104 F.Supp.2d 1, 3 (D.D.C. 2000) ("The court may consider [on a motion to dismiss] the allegations of the complaint, documents attached to or specifically referred to in the complaint, and matters of public record.").

In ruling on a motion to dismiss pursuant Fed. R. Civ. P. 12(b)(1), the court must find that Plaintiffs can prove no set of facts in support of their claim that would entitle them to relief. A court may appropriately dispose of a case under Rule 12(b)(1) on standing grounds, but the Plaintiffs' complaint must be construed liberally and should receive the benefit of all favorable inferences that can be drawn from the alleged facts. Plaintiffs, however, still have the burden of proving subject matter jurisdiction by a preponderance of the evidence. Wiggins v. Powell, 2005 U.S. Dist. LEXIS 3984 (D.D.C. March 7, 2005).

Specifically, the Plaintiffs' burden of production on standing is "the same as that of a plaintiff moving for summary judgment in the district court: it must support each element of its claim to standing 'by affidavit or other evidence,' " Sierra Club v. EPA, 292 F. 3d 895, 899 (D.C. Cir. 2002), quoting Defenders of Wildlife, 504 U.S. at 561, and must thereby "show a 'substantial probability' that it has been injured, that the defendant caused its injury, and that the court could redress that injury." Id., quoting Am. Petroleum Inst. v. EPA, 216 F.3d 50, 63 (D.C. Cir. 2000). To satisfy this burden the proponent of the suit "must either identify in [the] record evidence sufficient to support its standing . . . or, if there is none . . . submit additional evidence . . .." Id.

The Supreme Court has made clear that "it is the responsibility of the complainant to clearly allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." Renne v. Geary, 501 U.S. 312, 316 (1991). In analyzing a Motion to Dismiss, the court must presume that "general allegations embrace those specific facts which are necessary to support the claim," Lujan v. Defenders of the Wildlife, 504 U.S. 555, 561, but it is not required "to fill in critical *lacunae* in plaintiffs' allegations." National Wrestling Coaches Association ("NWCA") v. U.S. Department of Education, 263 F. Supp. 2d 82,

5

108 (D.D.C. 2003), *aff'd on appeal*,383 F.3d 1047 (D.C.Cir. May 14, 2004), *cert. denied*, ___ U.S. ___, 125 S.Ct. 2537 (2005). Because the facts are uniquely within Plaintiffs' knowledge, their "failure to allege them with sufficient specificity to provide notice of the precise basis for standing to maintain this suit cannot be overlooked." Id. Here, Plaintiffs have not and cannot allege a sufficient factual basis to support the conclusion that they have standing to sue.

**C.    Argument**

      1.    The Randolph-Sheppard Act Does Not Establish a Private Right of Action

In Cort v. Ash, 422 U.S. 66 (1975), the United States Supreme Court identified the factors to be weighed to determine whether Congress has implied a private right of action: First, are the Plaintiffs "of the class for whose especial benefit the statute was enacted," that is, does the statute create a federal right in favor of Plaintiffs? Secondly, does the legislative intent, explicit or implicit, either create or deny such a remedy? Thirdly, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the Plaintiffs? And, finally, is the cause of action advanced one traditionally relegated to state law ... so that it would be inappropriate to infer a cause of action based solely on federal law? Id. at 78 (citations omitted).

Our Circuit has "reviewed Cort and its progeny and concluded that, in assessing whether Congress intended an expressly provided remedy to be the only remedy, 'the central analysis is directed at discovering legislative intent by means of "the language of the statute, the statutory structure, or some other source." Tax Analysts v. IRS, 214 F.3d 179, 186 (D.C. Cir. 2000), quoting Karahalios v. National Fed'n of Fed. Employees, Local 1263, 489 U.S. 527, 532-33 (1989), as quoted in Government of Guam v. American President Lines, 28 F.3d 142, 145 (D.C.Cir.1994). As stated by the Court in Fillinger v. Cleveland Society for the Blind, 587 F.2d 336 (6th Cir. 1978),

6

> Congress in 1974 amended the Randolph-Sheppard Act to provide that an aggrieved blind vendor may request a 'full evidentiary hearing' before the state agency which supervises the program, 20 U.S.C. § 107d-1(a), and, if still dissatisfied 'may file a complaint with the Secretary (of HEW) [(now EDD)] who shall convene a panel to arbitrate the dispute' in accordance with detailed standards outlined in the 1974 amendments. See 20 U.S.C. §§ 107d-1, 107d-2. The 1974 amendments authorize the parties to obtain judicial review of the decision of the arbitrators under the Administrative Procedure Act, Title 5, Ch. 7, United States Code.
>
> **Congress' decision to provide administrative and arbitration remedies for aggrieved blind vendors clearly evidences a policy judgment that the federal courts should not be the tribunal of first resort for the resolution of such grievances.** Rather congressional policy as reflected in the 1974 amendments is that blind vendors must exhaust their administrative and arbitration remedies before seeking review in the district courts.

Id. at 337-338 (emphasis added). This holding, together with the entire statutory scheme evidences a congressional preference for supervision of the workings of the program through state agencies. The only enforcement procedure in fact must be initiated through a state agency. It does not appear that Congress contemplated the use of the statute as an enforcement mechanism of Congress' mandates to EDD. This process appears to be left to the congressional oversight function.

Accordingly, as stated by the Court in Government of Guam v. American President Lines, [w]here Congress has provided an express remedy, the Court has explained, '[t]he presumption that a remedy was deliberately omitted from a statute is strongest when Congress has enacted a comprehensive legislative scheme including an integrated system of procedures for enforcement.'" 28 F.3d at 145-46, quoting Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 147 (1985), with an internal quotation from Northwest Airlines, Inc. v. Transport Workers, 451 U.S. 77, 97 (1981). Here, the enforcement scheme is structured for use in resolving the claims of blind vendors. The

R-S Act was not designed to be a mechanism that affords district court's jurisdiction of claims challenging executive administration of congressional mandates.[2]

### 2. Plaintiffs Have Not Alleged or Suffered Any Harm

The Constitution requires a plaintiff to establish three elements to demonstrate standing to sue the federal government for failure to carry out its executive functions. Valley Forge Christian College v. Americans United for Separation of Church and State, 454 U.S. 464, 472 (1982); see also National Wrestling Coaches Assoc. v. U.S. Department of Education, 263 F. Supp. 82, 105-106 (D.D.C. 2003). First, the plaintiff must show that he or she has suffered an "'injury in fact' — an invasion of a legally protected interest which is (a) concrete and particularized, . . . and (b) 'actual or imminent' not 'conjectural' or 'hypothetical'". Lujan, 504 U.S. at 560; see also Bensenville v. FAA, 376 F.3d 1114, 1118-19 (D.C. Cir. 2004). Second, the alleged injury must be "traced to the challenged action." Lujan, 454 U.S. at 560 (quoting Simon v. Eastern Kentucky Welfare Rights Org., 426 U.S. 26, 41-42 (1976); see also Florida Audubon Society v. Bentsen, 94 F.3d 658, 663 (D.C. Cir. 1996). Third, the alleged concrete injury must be "likely to be redressed by a favorable decision" of the court hearing the matter. Valley Forge, 454 U.S. at 472; see also Florida Audubon Society, 94 F.3d at 661.

Further, in order to demonstrate standing for a claim requesting declaratory or injunctive relief (such as the mandamus[3] sought here), "[t]he plaintiff must show that he 'has sustained or is

---

[2] Given that mandamus is not an independent source of jurisdiction, Plaintiffs pursuit of this form of relief does not help. See Swan v. Clinton, 100 F.3d 973, 976 n.1 (D.C.Cir. 1996).

[3] Plaintiff has filed a mandamus claim under 28 U.S. C. 1361. A writ of mandamus does not confer an independent basis of jurisdiction but rather merely supplies a permissible remedy in actions otherwise properly brought on independent jurisdictional grounds. See Udall v. Oil Shale
(continued...)

immediately in danger of sustaining some direct injury' as the result of the challenged official conduct and the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" City of Los Angeles v. Lyons, 461 U.S. 95, 101-02 (1983) (citations omitted); see also Branton v. FCC, 993 F.2d 906, 908 (D.C. Cir. 1993).  In Branton, a citizen challenged the FCC's ruling that a radio broadcast that contained profanity was not "indecent" because the tape was part of a "bona fide" news story.  The court held the "possibility that the petitioner will again some day be exposed to broadcast indecency lacks the imminence required under Lyons…" Branton, 993 F. 2d at 909.  Similarly, Plaintiffs have provided absolutely no evidence that they will suffer immediate harm if staffing levels are not adjusted, and the possibility of some harm in the future is too attenuated to establish a real injury.

> **a.      Plaintiffs' have not established "concrete and particularized" injury**

Plaintiffs utterly fail to allege or establish the existence of a "concrete and particularized" injury.  In their complaint, Plaintiffs do not state that they have suffered any actual injuries as a result of the Secretary's actions or inactions.  Instead, they claim that at some unspecified point in the future they might "not receive the full benefit of the programs and services intended by Congress" when it amended the R-S Act.  Plaintiffs' complaint does not argue that the blind vendors or the National Federation for the Blind have suffered harm, much less lost a single dollar in revenue, as a result of RSA's alleged failure to properly staff the R-S Act program.  Moreover, none of the individual Plaintiffs in this action has provided an affidavit or declaration demonstrating that

---

(...continued)
Corp., 406 F.2d 759 (10th Cir. 1969); Prairie Band of Pottawatomie Tribe of Indians v. Udall, 355 F.2d 364 (10th Cir. 1966), *cert. denied*, 385 U.S. 831, 87 S. Ct. 70, 17 L. Ed. 2d 67; Smith v. United States, 224 F. Supp. 402 (D.Wyo.1963), *aff'd*, 333 F.2d 70 (10th Cir. 1964); International Fed. of P. & T. Eng., Loc. No. 1 v. Williams, 389 F. Supp. 287, 290 (E.D.Va.1974). (See also n.2, *infra*.)

they have suffered <u>any</u> losses or suffered any harm of any type -- in the past or currently. Rather, Plaintiffs state in cursory fashion that they might "not receive the full benefits of the programs and services intended by Congress." Complaint at 21. In short, Plaintiffs have not provided a scintilla of evidence to show that they have suffered particularized harm as the result of the Department's alleged failure to properly staff the R-S Act.

Critically, mere alleged legal violations are not enough to establish harm. The Supreme Court has held that violations of law, even if true, are not sufficient to establish injury in fact. Without this key element of <u>Lujan</u>'s standing analysis, Plaintiffs cannot show standing to sue. <u>Allen v. Wright</u>, 468 U.S. 737, 754 (1984); see also <u>Humane Society of United States v. Hodel</u>, 840 F.2d 45, 52 (D.C. Cir. 1988).

The Supreme Court's analysis in <u>Allen</u> supports this argument. In <u>Allen</u>, respondents challenged IRS guidelines and procedures with respect to granting tax-exempt status to discriminatory private schools. The Court vacated a lower court judgment and stated that the first basis for standing alleged by respondents -- that they were harmed directly by the mere fact of government financial aid to discriminatory private schools -- did not constitute a judicially cognizable injury. The Court also rejected respondents second argument -- that their children were being deprived of an opportunity to receive an education in racially integrated schools – because that judicially cognizable injury was not fairly traceable to the government conduct that respondents challenged as unlawful. The Court concluded that "an asserted right to have the Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court." <u>Allen v. Wright</u>, 468 U.S. at 754.

Here, as in Allen, Plaintiffs' conclusory allegation that RSA has violated the R-S Act, without any further allegations or evidence, is insufficient to establish jurisdiction. See also Valley Forge Christian College v. Americans United for Separation of Church and State, 454 U.S. 464, 483 ("[Assertion] of a right to a particular kind of Government conduct, which the Government has violated by acting differently, cannot alone satisfy the requirements of Art. III without draining those requirements of meaning.")

### b.     Allegations of anticipated injury are not enough

Plaintiffs cannot establish standing by merely arguing that the Department has violated the R-S Act. The controlling authorities require a more concrete invasion of a legally protected interest. Allegations of speculative future injury will not suffice. See, e.g., City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983); Simon, 426 U.S. at 40 (1976); United Transportation Union v. ICC, 891 F.2d 908, 911 (D.C. Cir. 1989). Rather, a future injury satisfies the concept of "imminence" only if the injury is "'certainly impending.'" Lujan, 504 U.S. at 565 n.2. (original emphasis) (citation omitted). The Supreme Court has repeatedly reaffirmed the doctrine requiring that a showing of "future injury be particular and concrete." See, e.g., Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 108 (1998). Plaintiffs have not demonstrated impending, particular or concrete future injury.

Thus, Plaintiffs' claim of an "anticipated injury" fails to meet the requirements of standing. Plaintiffs' assertion that they anticipate some form of unspecified injury at some unknown time in the future does not establish standing. In short, a plaintiff lacks standing where the court must accept speculative inferences and assumptions in order to connect the alleged injury with the challenged activity. See, e.g., National Maritime Union of America v. Commander, Military Sealift

Command, 824 F.2d 1228 (D.C. Cir. 1987).  For example, in Crete Carrier Corp. v. Environmental Protection Agency, 363 F. 3d 490 (D.C. Cir. 2004), operators of five large-haul truck fleets challenged the Environmental Protection Agency's refusal to reconsider the 2004 Standard for nitrous oxide and nonmethane hydrocarbon emissions from "'heavy heavy-duty'" diesel engines. Because the trucking companies failed to show that their injury was fairly traceable to the 2004 Standard, the court dismissed their petition for lack of standing under Article III.  In reaching this conclusion, the court held:

> The Trucking Companies offer ***only assertions***, not facts, to support their claims about the likely response of engine manufacturers to repeal of the 2004 Standard. That will not do. ***Speculative and unsupported assumptions regarding the future actions of third-party market participants are insufficient to establish Article III standing. Without actual evidence*** of how engine manufacturers would respond to relaxation or rescission of the 2004 Standard - and the Trucking Companies have proffered none - we cannot 'wade into this morass of marketplace analysis,' and emerge with the conclusion the engine manufacturers would revert to producing pre-October 2002 engines.

Id. at 494 (internal citations omitted)  (emphasis added).

Plaintiffs in this case face the same problem. They have offered nothing but speculation to suggest that the blind vendors subject to the R-S Act would enjoy changed circumstances if Plaintiffs were to prevail in this case.  For example, Plaintiffs have not claimed that the alleged failure to properly staff the R-S Act led to the failure to win a bid on a cafeteria contract or that another plaintiff's gross receipts are declining because of RSA staffing levels.  Through their speculation and unsupported assumptions regarding "the full benefit of the programs and services intended by Congress," Plaintiffs have not satisfied the harm prong of the standing test.

    2.    <u>NFB and NABM Lack Associational Standing</u>

The fact that a plaintiff is an association seeking to advance claims on behalf of its members does not "eliminate or attenuate the constitutional requirements of a case or controversy." <u>Warth v. Seldin</u>, 422 U.S. 490, 511 (1975). "The association must allege that its members, or any one of them, are suffering immediate threatened injury of the sort that would make out a justiciable case had the members themselves brought suit." <u>Id</u>. <u>See</u> <u>Fund Democracy, LLC v. SEC</u>, 278 F.3d 21, 25 (D.C. Cir. 2002). Where, as here, the plaintiff is an association seeking to sue on behalf of its members, that plaintiff must demonstrate that (1) at least one of its members would have standing to sue in his own right, (2) the interests the association seeks to protect are germane to its purpose, and (3) neither the claim asserted nor the relief requested requires that an individual member of the association participate in the lawsuit. <u>See Hunt v. Washington State Apple Adver. Comm'n</u>, 432 U.S. 333, 343 (1977).

Neither NFB nor NABM have established standing. As argued above, the three blind vendors have not established an actual injury or traceability of that injury to the alleged failure to act by RSA. Thus, NFB and NABM have not met the threshold requirement of demonstrating that their "members would otherwise have standing to sue in their own right." <u>Id</u>.

## CONCLUSION

WHEREFORE, Defendants submit that the Court should grant their motion to dismiss this action with prejudice.

Respectfully submitted,

_____
KENNETH L. WAINSTEIN, D.C. BAR # 451058
United States Attorney


_____
R. CRAIG LAWRENCE, D.C. BAR # 171538
Assistant United States Attorney


_____
OLIVER W. McDANIEL, D.C. Bar #377360
Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 616-0739


OF COUNSEL:

DAVID A. BERTHIAUME
JEFFREY B. ROSEN
Office of the General Counsel
U.S. Department of Education

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of December, 2005, I caused the foregoing Motion to Dismiss, Memorandum of Points and Authorities in Support Thereof and proposed order to be served on Plaintiffs' Counsel by Electronic Court Filing system or, if this means fails, then by mail, postage prepaid, addressed as follows:

**Shelly Marie Martin**
**Brown, Goldstein & Levy, LLP**
**120 E. Baltimore Street, Suite 1700**
**Baltimore, MD 21202**

_____
OLIVER W. MCDANIEL, D.C. BAR # 377360
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C.  20530
(202) 616-0739