IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE NATIONAL FEDERATION OF THE BLIND, *et al.*, | * |
| | *    Case No. 1:05 CV 01839 |
| Plaintiffs, | |
| | *    Judge Colleen Kollar-Kotelly |
| v. | * |
| MARGARET SPELLINGS, *et al.*, | |
| | * |
| Defendants | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

### Preliminary Statement

Plaintiffs satisfy the legal requirements to pursue an action in the nature of mandamus. Congress has required certain minimum staffing at the Department of Education to ensure that the Randolph-Sheppard Act is properly implemented at the federal level. By ignoring that mandate, the Defendants have breached a non-discretionary duty to present and prospective blind vendors. No other adequate remedy is available to require the Defendants to comply with the law. As such, Plaintiffs are entitled to seek relief in the nature of mandamus from this Court to require the Defendants to staff the Randolph-Sheppard program as Congress has directed.

Defendants' assertion that Plaintiffs lack standing is incorrect. The Plaintiffs have and will be injured because the Department of Education ("the Department"), as a result of reducing its staff to below the Congressionally-mandated minimum, has been unable to provide timely technical assistance and advice regarding the interpretation of the Randolph-Sheppard Act and to require sister agencies to comply with the Act in time to create opportunities for blind vendors.

As set forth below, these failures have and will continue to injure the Plaintiffs. Accordingly, they have standing to pursue their Complaint.

## Argument

I. RELIEF IN THE NATURE OF MANDAMUS IS AVAILABLE TO VINDICATE A FEDERAL STATUTORY RIGHT IN THE ABSENCE OF A PRIVATE RIGHT OF ACTION UNDER THAT STATUTE.

Defendants appear to challenge the Court's subject matter jurisdiction to entertain a suit in the nature of mandamus against a federal official to vindicate a federally-created right. Defendants' Memorandum in Support [sic] of their Motion to Dismiss ("Def. Mem.") at 8, n.2 & 3. Plaintiffs bring their suit under 28 U.S.C. § 1361. Section 1361 "provides an independent grant of jurisdiction to the federal courts."[1] At all events, because the Plaintiffs raise a question as to the interpretation of an Act of Congress, to wit, its command to staff the administration of the Randolph-Sheppard Act at a certain level, general federal question jurisdiction exists.

Defendants correctly assert that the Randolph-Sheppard Act provides no private right of action by Randolph-Sheppard vendors against the Department of Education. Defendants then incorrectly argue that relief in the nature of mandamus can be had only when a statute expressly or impliedly provides a cause of action. The converse is true: a prerequisite for relief under Section 1361 is that "there is no other adequate remedy available to the plaintiff."[2] Section 1361

---

[1] *Welch v. Donovan*, 551 F. Supp. 809, (D.D.C. 1982); *see Nat'l Welfare Rights Org. v. Weinberger*, 377 F. Supp. 861, 866-67 (D.D.C. 1974).

[2] *Swan v. Clinton,* 100 F.3d 973, at 977 n.1 (D.D.C. 1996).

provides " an avenue to remedy violations of statutory duties even when the statute that creates the duty does not contain a private cause of action."[3]

In *Chamber of Commerce v. Reich*, the D.C. Circuit held that even when "a plaintiff is unable to bring his case predicated on either a specific or general statutory review provision, he may still be able to institute a non-statutory review action."[4] Mandamus is often referred to as a non-statutory vehicle for review because the writ of mandamus is traditionally available as a non-statutory remedy.[5] The Circuit Court has subsequently reaffirmed that no private right of action is necessary to obtain mandamus relief. The lack of a private right of action "has no effect on our jurisdiction. . . . Instead, because [plaintiff] sought a writ of mandamus, whether it stated a cause of action depends on the All Writs Act . . . ."[6]

Indeed, Defendants' argument that an implied private right of action is a prerequisite to recovery under Section 1361 would render that section utterly superfluous and redundant: general federal question jurisdiction is always available to enforce a federal statutory right and an implied private right of action would provide the vehicle for doing so, without any reference to Section 1361. Thus, the consideration of a remedy in the nature of mandamus in this Circuit

---

[3]*Judicial Watch, Inc. v. National Energy Policy Dev. Group*, 219 F. Supp. 2d 20, 42 (D.D.C. 2002); following subsequent opinion, *app. dism'd sub nom. In re Cheney*, 334 F.3d 1096 (D.C. Cir. 2003), *vacated and remanded, sub nom. Cheney v. U. S. Dist. Ct.,* 542 U.S. 367 (2004), *on remand, sub nom. In re Cheney,* 406 F.3d 723 (2005).

[4]74 F.3d 1322, 1327, (D.C.Cir. 1996) .

[5]*Judicial Watch*, 219 F. Supp. 2d at 42, n. 10.

[6]*Consolidated Edison Co. of New York, Inc. v. Ashcroft*, 286 F.3d 600, 604 (D.C.Cir. 2002).

turns on whether the executive is failing to execute laws enacted by Congress, and not the existence, *vel non,* of an implied private right of action.[7]

    II.    PLAINTIFFS HAVE STANDING AND, AS REQUIRED BY SECTION 1361, A CLEAR RIGHT TO RELIEF.

To establish Article III standing, each of these plaintiffs must show: (1) that he or she suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent; (2) a causal relationship between the injury and the challenged conduct; and (3) that the injury will likely be remedied by a favorable court decision.[8]

Mandamus requires that "'(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to the plaintiff.'"[9] Plaintiffs have "a clear right to relief," not only in that they have standing, but also because Congress enacted the Randolph-Sheppard Act for their benefit. Because of the overlap between standing and a clear right to relief, the two are addressed jointly.

The Randolph-Sheppard Act exists "for the purposes of providing blind persons with remunerative employment, enlarging the economic opportunities of the blind, and stimulating the blind to greater efforts in striving to make themselves self-supporting."[10] This is accomplished through state-administered programs authorizing the licensure of blind persons to operate vending facilities on all Federal properties.[11] The Randolph-Sheppard Act and its implementing

---

[7] *See, e.g., Swan,* 100 F.3d at 977-78; *NTEU v. Nixon,* 492 F.2d 587, 604 (D.C. Cir. 1974).

[8] *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-561 (1992).

[9] *Swan,* 100 F.3d at 977, n.1.

[10] 20 U.S.C. § 107(a).

[11] 20 U.S.C. § 107(b).

regulations provide that blind persons shall be given priority to operate vending facilities, including cafeterias, on federal property.[12]

Clearly, the Act was enacted to benefit blind persons seeking employment, thereby giving rise to a duty on the part of the executive branch to blind vendors and those who would become blind vendors. Each individual Plaintiff is a blind participant in this program and, as such, is within the zone of persons the Randolph-Sheppard Act seeks to protect. One of the organizational Plaintiffs, the National Federation of the Blind, is an organization composed of blind persons, and their families and friends, many of whom want the economic opportunity to become Randolph-Sheppard vendors.[13] The second organizational Plaintiff, the National Association of Blind Merchants, serves as a membership organization of blind persons employed in the Randolph-Sheppard vending program and as an advocacy and support group on their behalf.[14]

In 1974 Congress amended the Randolph-Sheppard Act to attempt to increase the number of federal sites available to blind persons who wished to become vendors. It explicitly found an executive failure to maximize employment opportunities for the blind, including the reluctance of some federal agencies to fully implement the Act.[15] "The Committee finds that there is a record of abuses and neglect of the Randolph-Sheppard program by various Federal agencies

---

[12] 20 U.S.C. §§ 107(b), 107e(7); 34 C.F.R. § 395.30(a).

[13] Exhibit 13, Affidavit of M. Maurer at ¶¶ 3, 8.

[14] Exhibit 13, Affidavit of M. Maurer at ¶ 6.

[15] S. Rep. 93-937, 93rd. Cong., 2nd Sess. (1974) at 10 (noting that the number of vending stands on federal properties was in decline and concluding that "the program in the Federal sector is languishing and even backsliding.")

that is adequate to justify the placement of increased overall authority for its operation with the Secretary of Health, Education, and Welfare."[16]  To "insure the continued vitality and expansion of the Randolph-Sheppard Program, [Congress required] stronger administration and oversight function in the Federal office carrying out the program . . . ."[17]  Congress recognized that the existing manpower was "woefully inadequate"[18] and that the Secretary would require additional manpower to meet this mandate, so it ordered her to hire ten additional full-time personnel (or their equivalent) to be assigned to the Office for the Blind and Visually Handicapped.[19]  With adequate staffing and the other reforms contained in the 1974 Amendments, Congress anticipated that the number of vending stands could be doubled.[20]  Congress in this instance has made the finding of injury, specifically concluding that without additional personnel, the Randolph-Sheppard program would not expand employment opportunities to the blind.[21]

Congress desired the Defendants to focus on expanding vending sites available through the General Services Administration, the Department of Defense, and the U.S. Postal Service, because "[t]heir performance in this regard has been less than satisfactory."[22]  And, indeed, since

---

[16] Sen. Rep. No. 93-937, 93rd Cong. 2nd Sess. (1974) at 16.

[17] Pub. L. No. 93-516, §201 (1974)(set out in notes to 20 U.S.C. §107).

[18] Sen. Rep. No. 93-937 at 11.

[19] 20 U.S.C. §107 *See* 29 U.S.C. §702 Note, codifying the Randolph-Sheppard Act Amendments of 1974, Pub. L. 93-516 §201 (1974).

[20] 119 Cong. Rec. 34082 (1973).

[21] "[T]here were in 1962 at least 40,000 blind persons who could be trained to successfully operate vending stand businesses.  This statistic underscores the need for expansion of job opportunities for our blind citizens."  119 Cong. Rec. 34082 (1973).

[22] Sen. Rep. No. 93-937 at 17.

the Defendants re-organized and slashed the manpower Congress directed be assigned to Randolph-Sheppard program, the Secretary has been unable to address the continuing reluctance of these federal agencies to comply with the Randolph-Sheppard Act.

When a federal agency contemplates a cafeteria contract, it is required to notify the state licensing agency of the upcoming opportunity and it then explains in its public solicitation that the Randolph-Sheppard Act applies.[23] Since October 1, 2005, when the Department of Education reorganized and scaled back the number of employees assigned to work on the Randolph-Sheppard program, the Department of Defense has begun the solicitation process for three military dining contracts that consist entirely of or include cafeterias.[24] Each of these solicitations is for a cafeteria to which the Randolph-Sheppard Act should apply.[25] Yet each of the solicitations states that the contract is set aside for small businesses or HUB-zone contractors. Under these programs, the state licensing agency will be affirmatively prohibited from competing for the contract.[26] The Department does not appear to have taken any action

---

[23] 34 C.F.R. § 395.33(b); Exhibit 8, Presolicitation Notice, Metropolitan Service Center, Washington, D.C. at page 2 ("The State Licensing Agency (SLA) will complete [sic] for this facility and will be selected if their proposal in is the competitive range.")

[24] Exhibit 2, Presolicitation Notice, Air Wing Food Service, Channel Islands Air Guard Station, Port Hueneme, California; Exhibit 3, Presolicitation Notice and Modifications, Air Force Space Command, Fort Warren, Wyoming; Exhibit 4, Sources Sought Notice and Solicitation, United States Military Academy, West Point, New York.

[25] *See NISH v. Cohen*, 247 F.3d 197, 205 (4th Cir. 2001), (holding that the Randolph-Sheppard Act applies to military mess halls); *NISH v. Rumsfeld*, 348 F.3d 1263 (10th Cir. 2003) (same); *Mississippi Dep't of Rehab. Servs. v. United States*, 61 Fed. Cl. 20 (2004) (holding that even when a solicitation is not for full food services, the Randolph-Sheppard Act applies if the extent of the attendant services to be supplied by the contractor constitute operation of the cafeteria).

[26] *See, e.g,* 48 C.F.R. § 19.502-4 (directing federal agencies to reject any offers received from companies that are not small businesses).

since October 1, 2005, to fulfill its statutory duty to ensure that the state licensing agencies are permitted to compete for these opportunities as is required by the Randolph-Sheppard Act. That failure by the Defendants injures the individual Plaintiffs and members of the organizational Plaintiffs who would otherwise have the opportunity to secure these cafeterias.

The General Services Administration has released three cafeteria solicitations since October 1, 2005, none of which state, as they should, that the priority for blind vendors established by the Randolph-Sheppard Act will be applied.[27] Again, the Department does not appear to have taken any action to ensure, prophylactically or after-the-fact, that GSA complies with the Randolph-Sheppard Act. Had the Department done so, blind individuals would have the opportunity to find employment through the Randolph-Sheppard Program.

In 2005, the Senate Committee on Health, Education, Labor, and Pensions ("HELP Committee") concluded that "many government office buildings contain large food courts. The HELP Committee found none that provide opportunities to licensed blind vendors."[28] A solicitation was issued for the food court at the Pentagon on November 4, 2005.[29] Once again, the solicitation makes no mention of applying the Randolph-Sheppard Act, and the Department does not appear to have taken any action to secure this opportunity for blind vendors.

---

[27] Exhibit 5, Presolicitation Notice and Solicitation, New Census Bureau Headquarters, Suitland, Maryland; Exhibit 6, Presolicitation Notice and Solicitation, Emaunel Celler U.S. Court Complex, New York, New York; Exhibit 7, Presolicitation Notice, Bureau of Alcohol, Tobacco, and Firearms, Martinsburg, West Virginia. Two of these documents state that the Randolph-Sheppard program will operate other, smaller facilities in the building, but make no mention of the Randolph-Sheppard priority applying to the main cafeteria, implying that the agency does not intend to apply the Randolph-Sheppard priority to the most lucrative portion of this contract. Exhibit 5 at 15, Exhibit 6 at 5.

[28] Exhibit 1, HELP Committee Report at 8 (2005).

[29] Exhibit 9, Combined Solicitation, Pentagon Food Concessions, Arlington, Virginia.

Many state agencies do not have the resources to seek legal redress against federal agencies that refuse to comply with the Randolph-Sheppard Act.[30] The Department's failure to intervene when federal agencies solicit contracts but do not apply the Randolph-Sheppard Act results in lost opportunities for blind vendors. The very problems Congress warned against (and provided additional staff to combat) continues after the Department's staffing cuts. Because the Plaintiffs "have suffered or will soon suffer the very injury about which Congress has repeatedly expressed concern,"[31] the Plaintiffs are entitled to mandamus.

The loss of these seven opportunities is not the only way that the Plaintiffs have been harmed since October 1, 2005. The Montana Randolph-Sheppard program consented to enter into an agreement with the Postal Service to operate all vending machines on Postal Service property in Montana.[32] Montana anticipates earning about $6,000-7,000 per month for its vendors and its Randolph-Sheppard program when the agreement is consummated.[33] Before it cut its staff, the Department responded to the parties' request for assistance in structuring the agreement to comply with the Act.[34] Yet after the cuts, Montana requested further assistance from the Department, which the Department has not provided.[35]

---

[30] Exhibit 12, Affidavit of T. Smith at 8.

[31] *Samaritan Health Center v. Heckler*, 636 F. Supp. 503, 518 (D.D.C. 1985).

[32] Exhibit 10, Affidavit of S. Hubbard at ¶ 5.

[33] Exhibit 10, Affidavit of S. Hubbard at ¶ 13.

[34] Exhibit 10, Affidavit of S. Hubbard at ¶¶ 7-8.

[35] Exhibit 10, Affidavit of S. Hubbard at ¶¶ 10-11.

Lack of adequate staffing has caused yet other problems. One of the Department's responsibilities is to ensure "distribution of income to blind vendors" by state licensing agencies.[36] Plaintiff Billie Ruth Schlank is a blind vendor in the District of Columbia. She is also a member of the Committee of Blind Vendors, an entity created by the Randolph-Sheppard Act to represent the interests of the vendors in each state.[37] On November 29, 2005, the Committee of Blind Vendors asked the Department to advise it about whether a policy change implemented by the state licensing agency was legal under the Act.[38] This policy change diverted about $10,000 per month in vending machine income from the vendors' pension fund to the state licensing agency for discretionary spending.[39] To date, the Department has not provided any guidance to the Committee about whether this diversion is permissible.[40]

It is clear that the Secretary's decision to cut back staff that was congressionally-mandated injured a program already in parlously bad shape. The problems noted by Congress in 1974 when it amended the Act have not been remedied. Just this year, the HELP Committee concluded that " . . .[I]t is clear that the Department of Education's stewardship of Randolph-Sheppard programs has been ineffective [and]. . . many opportunities have been lost . . . ."[41]

---

[36] 20 U.S.C. §107b(1).

[37] Exhibit 11, Affidavit of B. Schlank at ¶ 3.

[38] Exhibit 11, Affidavit of B. Schlank at ¶ 12.

[39] Exhibit 11, Affidavit of B. Schlank at ¶¶ 6, 7, 14.

[40] Exhibit 11, Affidavit of B. Schlank at ¶ 13.

[41] Exhibit 1, HELP Committee Report at 8 (2005).

Standing must be proven "in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.* with the manner and degree of evidence required at the successive stages of the litigation."[42] In the face of a motion to dismiss for lack of standing, the Plaintiffs need only demonstrate that there is a "substantial probability" that they will suffer injury.[43] Plaintiffs have demonstrated several instances of the Department's failure to act after cutting its staff. In one of those instances, the Department responded to a request for assistance before cutting its staff, but failed to do so after cutting personnel.[44] If Defendants contend that something other than staff cuts proximately caused their dereliction of duty, that is a matter of proof and the case should proceed to discovery. Plaintiffs should have the benefit, at least at this stage, however, of the Congressional finding that a higher level of staffing than the Department currently has is necessary for the Department to properly carry out its duties.

There is a substantial probability that the staff cutbacks will imminently injure all individual Plaintiffs. However, as to two of the individual Plaintiffs, a concrete and particular injury has already occurred. Plaintiff Donald Morris is a licensed blind vendor in Maryland[45] and thus could seek to obtain the cafeteria in Suitland, Maryland at the new Census Bureau Headquarters. Unfortunately, this is one of the solicitations issued by the General Services Administration that fails to recognize a priority for Randolph-Sheppard vendors.[46] Plaintiff

---

[42] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

[43] *Rainbow/PUSH Coalition v. Federal Communications Commission*, 396 F.3d 1235, 1239 (D.D.C. 2005).

[44] Exhibit 10, Affidavit of S. Hubbard at ¶¶ 7, 8, 10, 11.

[45] Compl. ¶ 7.

[46] Exhibit 5.

Billie Ruth Schlank is a licensed blind vendor in the District of Columbia whose pension fund is being depleted by the Defendants' failure to address the illegal conduct of the state licensing agency.

The two organizational Plaintiffs have representative standing to pursue this case. An association may sue in a representative capacity if "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."[47]

The first prong of the associational standing test is satisfied because the individual Plaintiffs, who are members of both organizations, have standing to sue in their own right. Other NFB members who are unemployed but could be trained to be Randolph-Sheppard vendors if the program was adequately administered, also have standing. Even if the NFB could not identify "with certainty which of the members" would be harmed by the defendants' action, it could satisfy this prong by showing that its members "are within the class of persons whose interests are necessarily, or with substantial probability, affected by the challenged agency action."[48] As seen, the Randolph-Sheppard Act was enacted for the benefit of the NFB's members who are being demonstrably injured by the absence of staffing Congress found would be necessary to adequately administer the program.

---

[47] *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 343 (1977); *Capital Area Immigrant's Rights Coalition v. U.S. Dept. of Justice*, 264 F. Supp. 2d 14, 21 (D.D.C. 2003).

[48] *American Maritime Association v. Blumenthal*, 458 F. Supp. 849, 855-856 (D.D.C. 1977).

Both organizations also pass the second element of the associational standing test. The NFB's purpose is to promote the general welfare of the blind by aiding in their efforts to integrate themselves into society on terms of equality and remove barriers and change social attitudes, stereotypes, and mistaken beliefs held by sighted and blind people about the limitations created by blindness that result in the denial of opportunity to the blind in virtually every sphere of life.[49] The NFB and many of its members have long been actively involved in promoting and advancing employment opportunities for the blind, including advocating for continued improvement in implementation of the Randolph-Sheppard Act. Ensuring that the Department complies with the Act is germane to the NFB's goals.

Similarly, the National Association of Blind Merchants ("NABM") serves as a membership organization of blind persons employed in the Randolph-Sheppard vending program and as an advocacy and support group on their behalf.[50] As the NABM specifically focuses on matters relating to employment for blind individuals involved with the Randolph-Sheppard program, its interest in this suit is obviously relevant to its organizational mission.

The third test for representative standing is also satisfied. Neither the claim nor the mandamus relief pursued require the participation of individual members to the lawsuit. Group representation is particularly suitable for actions seeking "declaratory, injunctive, and other forms of prospective relief."[51] The merits of this lawsuit can be summed up in two questions (1) Did Congress mandate the Department to assign ten additional people to oversee the Randolph-

---

[49] Exhibit 13, Affidavit of M. Maurer at ¶¶ 4, 5.

[50] Exhibit 13, Affidavit of M. Maurer at ¶¶ 6.

[51] *Camel Hair & Cashmere Inst., Inc. v. Associated Dry Goods Corp.*, 799 F.2d 6, 12 (1st Cir. 1986).

Sheppard Act? and (2) Does the Department, in fact, have ten additional people assigned to the Randolph-Sheppard Act?  The participation of the NFB's and NABM's members are not necessary to answer those questions.

In short, the record demonstrates that all Plaintiffs, individual and organizational, have or will imminently suffer actual and concrete injury caused by the Defendants' flouting of Congress' command.  Moreover, the remedy sought in this case, to order the Secretary to staff the program as mandated, is reasonably likely to mitigate the harm.

### III. THE REMAINING LEGAL REQUIREMENTS FOR MANDAMUS ARE MET.

#### A. Defendants Have a Clear Duty to Act.

Defendants imply that the Court cannot provide relief by mandamus because they have discretion to administer the Randolph-Sheppard Act.[52]  While the Court does not have mandamus jurisdiction to review discretionary acts,[53] no discretionary acts are at issue in this case.  Congress did not tell the Department to think about whether hiring additional staff was a good idea.  It directed the Department to hire additional staff.  "The Secretary of Health, Education, and Welfare is directed to assign to the Office for the Blind and Visually Handicapped of the Rehabilitation Services Administration . . . ten additional full time personnel (or their equivalent), five of whom shall be supportive personnel, to carry out duties related to the administration of the Randolph-Sheppard Act."[54]  This command imparts no discretion.

---

[52] Def. Mem. at 3.

[53] *Nat.'l Welfare Rights Org.*, 377 F. Supp. at 867 (holding that statute requiring agency to promulgate regulations that were "not inconsistent" with the statute created non-discretionary duty and exercising jurisdiction over claim that regulations were contrary to statute)

[54] 29 U.S.C. § 702, note, P.L. 93-516, § 208(a).

      B.      <u>Plaintiffs Have No Alternative Remedies</u>.

The Defendants admit that the Plaintiffs have no alternative remedy. As the Defendants explain, the Randolph-Sheppard Act provides "an enforcement scheme for the claims of blind vendors, but no enforcement scheme for the type of claim the Plaintiffs advance in this action."[55] The Act provides no method for a vendor to resolve any disputes against any federal agency, including the Department of Education.

The Defendants would have "congressional oversight" be the only means of enforcing the Department's obligations under the Act.[56] This contention is particularly ironic given the Department's recent refusal to cooperate with Congress. On October 20, 2005, the Senate HELP Committee convened to address the Department's "ineffective" stewardship of the program.[57] The Department was invited to send a representative to testify at this hearing, but failed to appear.

## Conclusion

Congress directed the Department to hire ten additional staff to oversee the Randolph-Sheppard Act. The Defendants have violated that directive, causing harm to present and potential blind vendors whom the Randolph-Sheppard Act seeks to empower. The Plaintiffs have standing to seek redress for this wrong, and this Court is the only forum in which they may bring their claims. The Court should exercise its jurisdiction under the mandamus statute to compel the Defendants to comply with their duties.

---

[55] Def. Mem. at 3.

[56] Def. Mem. at 7.

[57] Exhibit 1, HELP Committee Report at 8 (2005).

WHEREFORE the Defendants' Motion to Dismiss should be denied. A proposed order is attached.

Respectfully submitted,

/s/
Daniel F. Goldstein
Shelly Marie Martin D.C. Bar No. 473462
Brown, Goldstein & Levy, LLP
120 E. Baltimore Street, Suite 1700
Baltimore, Maryland 21202
410-962-1030/fax 410-385-0869

*Attorneys for Plaintiffs*

January 17, 2006

## CERTIFICATE OF SERVICE

I hereby certify that on this __17th__ day of January 2006 the forgoing Opposition to Defendants' Motion to Dismiss was served on all parties via the Court's electronic filing system.

/s/
Shelly Marie Martin
