IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE NATIONAL FEDERATION<br>OF THE BLIND, *et al.*,<br><br>    Plaintiffs,<br><br>        v.<br><br>MARGARET SPELLINGS, *et al.*,<br><br>    Defendants | *<br>*   Case No. 1:05 CV 01839<br>*<br>*   Judge Colleen Kollar-Kotelly<br>*<br>*<br>*<br>* |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**OPPOSITION TO DEFENDANTS' SECOND SUPPLEMENTAL
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Plaintiffs, through their undersigned counsel, submit the following Opposition to the Defendants' Second Supplemental Memorandum in Support of their Motion to Dismiss and state:

The Defendants have submitted a supplemental memorandum in support of their motion to dismiss – their second supplemental memorandum thus far – asserting that the supplemental memorandum was necessary to update the Court about changes in the law governing the Motion to Dismiss. The memorandum is little more than a string citation of cases decided since the filing of the Motion to Dismiss, with no effort made to explain how these cases change the law applicable to the Motion to Dismiss or to apply this "new" law to the facts of this case. The absence of any such analysis is telling. In fact, there has been no change in the law that governs this Motion. The Defendants themselves describe the new cases as decisions that "reaffirm[]" the applicable standards and "reiterate[] long-held principals."[1] The supplemental memorandum

---

[1] Defendants' Second Supp. Mem. at 4, 6.

adds nothing new to the Motion to Dismiss and serves merely to delay the onset of discovery and resolution of this case on the merits.

**Facts**

In 1974, Congress determined that a minimum of 13 full-time employees were necessary to effectively operate the Randolph-Sheppard program, and this requirement was enacted into law. Compl. ¶¶ 16, 17. On October 1, 2005, the Defendants reorganized departments within the Department of Education and laid off staff, such that the minimum staffing level is no longer met. Comp. ¶ 20.

Since the lay offs, the Department of Education has failed to perform its duties of overseeing and administering the Randolph-Sheppard program. While it was previously responsive to issues raised by blind vendors, those issues are now ignored. Specific examples of the Department of Education's inability to perform its duties are discussed in the Opposition to the Motion to Dismiss. Among them, federal agencies sought to procure services at six cafeterias, but sought to do so without applying the Randolph-Sheppard Act, thereby depriving blind vendors of the opportunity to compete for these contracts. That behavior continues. At least four other solicitations for cafeteria or mess attendant services have been improperly issued under various small business set-asides since the filing of the Motion to Dismiss.[2] Under these programs, the applicable state licensing agency/Randolph-Sheppard vendor will be affirmatively

---

[2] *See,* Exhibit 1, Pre-Solicitation Notice, Fairchild Air Force Base. Exhibit 2, Solicitation, New Jersey Air National Guard; Exhibit 3, Excerpts of Solicitation, Mountain Home Air Force Base; Exhibit 4, Excerpts of Solicitation, Hurlburt Air Force Base.

prohibited from competing for the contract.[3] The inability to even compete for a contract on a fair playing field is a harm that can be redressed by the Courts.[4] The Plaintiffs are unaware of any action taken by the Department of Education in response to these improper solicitations.

**Argument**

The Complaint and the supporting affidavits and documents demonstrate that the Plaintiffs have standing. The Defendants' Motion to Dismiss should be denied so that the parties can begin discovery and reach the merits of their dispute.

I. EVEN IF THE *TWOMBLY* STANDARD IS APPLICABLE, THE COMPLAINT PLEADS FACTS THAT SHOW THE PLAINTIFFS' ENTITLEMENT TO RELIEF.

The Defendants claim that the Court should apply the standard set out by the Supreme Court in *Bell Atlantic Corp. v. Twombly*,[5] to govern the pleading of conspiracy and coordinated action in antitrust cases. *Twombly* requires that a plaintiff allege facts that show that companies affirmatively acted in concert, at least where the actions that allegedly show an anti-competitive agreement could also have been taken for legitimate business reasons.

Here, of course, there is no allegation of conspiracy. The Complaint amply demonstrates the basis of the Plaintiff's claim: that the Defendants laid off staff (which the defendants do not deny), that the Defendants currently have fewer than 13 employees assigned to the Randolph-

---

[3] *See, e.g,* 48 C.F.R. § 19.502-4 (directing federal agencies to reject any offers received from companies that are not small businesses).

[4] *Impressa Construzioni Geom. Domenico Garufi v. United States*, 52 Fed. Cl. 826, 828 (2002) (loss of "opportunity to compete on a level playing field for a contract is sufficient to establish irreparable harm." *See also Seattle Security Services, Inc. v United States*, 45 Fed. Cl. 560, 571 (1999).

[5] ____, U.S. ____, 127 S. Ct. 1955 (2007).

Sheppard program (which the Defendants do not deny), and that this violates the legally-mandated staffing minimum set out in Pub. L. No. 903-516, § 201 (1974).[6] If the law requires minimum staffing, the Defendants are required to comply. Unlike in *Twombly*, there is no "innocent" alternative explanation that could render the failure to comply with the minimum-staffing requirement legally acceptable.

II.  PLAINTIFF'S HAVE STANDING TO SEEK MANDUMUS

The Defendants assert that because Congress required some disputes regarding the Randolph-Sheppard Act to be resolved through arbitration, the Plaintiffs have no private right of action to seek mandamus for violations that are not covered by the Randolph-Sheppard arbitration scheme. As is explained at length in the Plaintiffs' Opposition to the Motion to Dismiss, the Defendants' argument is incorrect.

III.  PLAINTIFFS ASSERT PARTICULAR HARM.

The Defendants next liken the Plaintiffs to taxpayers seeking to assert general grievances against the government. The individual Plaintiffs, however, have licenses to participate in the Randolph-Sheppard program and earn their livelihoods through this program. They assert particularized harms that they have suffered because the lack of adequate staff prevents the Department of Education from carrying out its responsibilities. Billie Ruth Schlank, for example, sought the Department's assistance because approximately $10,000 per month was (and still is) diverted from the District of Columbia vendors' pension fund to other uses.[7] The

---

[6]Codified at 29 U.S.C. § 201, Note.

[7]Affidavit of B. Schlank, Attached as Exhibit 11 to Opposition to Motion to Dismiss, Docket No. 9.

loss of her share of that income is a concrete, particularized injury.

    IV.    THE ORGANIZATIONAL PLAINTIFFS HAVE STANDING.

As discussed at length in the Plaintiffs' Opposition to the Motion to Dismiss, the organizational Plaintiffs have as members licensed Randolph-Sheppard vendors who have suffered harm because of the Defendants' actions.  Vendors have suffered financial harm due to the Department of Education's neglect [8] as well the loss of the opportunity to compete for new Randolph-Sheppard facilities.  The organizational Plaintiffs, therefore, have standing to assert claims on behalf of their members.

## Conclusion

Congress directed the Department of Education to hire ten additional staff to oversee the Randolph-Sheppard program.  The Defendants have violated that directive, causing harm to blind vendors whom the Randolph-Sheppard Act seeks to empower.  The Court should exercise its jurisdiction under the mandamus statute to compel the Defendants to comply with their duties.

WHEREFORE the Defendants' Motion to Dismiss should be denied.  A proposed order is attached.

                Respectfully submitted,

                /s/
                Daniel F. Goldstein
                Shelly Marie Martin D.C. Bar No. 473462

---

[8] See, Aff. of S. Hubbard, explaining that Montana Randolph Sheppard vendors lost $6,000-$7,000 due to delays in obtaining contract.  Exhibit 10 to Opposition to Motion to Dismiss, Docket No. 9.

                    Brown, Goldstein & Levy, LLP
                    120 E. Baltimore Street, Suite 1700
                    Baltimore, Maryland 21202
                    410-962-1030/fax 410-385-0869

                    *Attorneys for Plaintiffs*

March 10, 2008

## CERTIFICATE OF SERVICE

I hereby certify that on this <u>10th</u> day of March 2008 the forgoing Opposition to Defendants' Second Supplemental Memorandum in Support of Motion to Dismiss was served on all parties via the Court's electronic filing system.

                                                  /s/
                                        Shelly Marie Martin