UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THE NATIONAL FEDERATION
OF THE BLIND, *et al.*,

    Plaintiffs,

    v.

MARGARET SPELLINGS, *et al.*,

    Defendants.

Civil Action No. 05-1839 (CKK)

**MEMORANDUM OPINION**
(June 24, 2008)

Plaintiffs National Federation of the Blind, National Association of Blind Merchants, Billie Ruth Schlank, Donald J. Morris, and Kevan Worley (collectively, "Plaintiffs") bring this action against Margaret Spellings, Secretary of the United States Department of Education, and Edward Anthony, Acting Commissioner of the Rehabilitation Services Administration, in their official capacities (collectively, "Defendants"). Plaintiffs are seeking a writ of mandamus requiring Defendants to comply with a 1974 amendment to the Randolph-Sheppard Act that directed the Secretary of Health, Education, and Welfare to assign an additional ten full-time employees to Randolph-Sheppard Act-related activities. Defendants have filed a Motion to Dismiss Plaintiffs' Complaint, primarily arguing that Plaintiffs lack constitutional standing to advance their claims. The Court believes that Plaintiffs' intentions in pursuing this litigation are laudable and that the continued vitality of the Randolph-Sheppard Act serves important goals for Plaintiffs and other persons and entities. Nevertheless, after a thorough review of the Parties' submissions, applicable case law and statutory authority, the Court finds that Plaintiffs lack

constitutional standing to pursue their claims. Accordingly, the Court shall grant Defendants' [5] Motion to Dismiss, and shall deny Plaintiffs' [12] Request for a Hearing on Defendants' Motion to Dismiss, for the reasons explained in greater detail below.

## I. BACKGROUND

*A.   Statutory Background*

The Randolph-Sheppard Vending Stand Act (the "Act" or the "Randolph-Sheppard Act") was enacted in 1936 to provide the blind with self-sustaining employment and to increase their economic opportunities. 20 U.S.C. § 107(a). The Act implements these objectives by authorizing blind persons to operate vending facilities on federal property and requiring that blind vendors licensed under the Act be given priority to operate such facilities. *Id.* § 107(b).

Congress amended the Randolph-Sheppard Act in 1974. *See* Pub. L. No. 93-516, 88 Stat. 1623 (1974). The Act, as amended, identifies the Rehabilitation Services Administration ("RSA") as the agency principally responsible for carrying out the provisions of the Act, and describes the various responsibilities of the Secretary of the United States Department of Education[1] to enforce or interpret the same. 20 U.S.C. § 107a. For example, the Secretary is responsible for designating State Licensing Agencies ("SLA's") to administer the Randolph-Sheppard Act within each state. *Id.* § 107a(5). A blind vendor who is interested in operating a vending facility on federal property must apply to his or her SLA for a license, *id.* § 107a(b), and the SLA, in turn, applies to the federal government seeking to place the licensee on federal property. *Id.* § 107a(c). Of particular relevance to the present lawsuit, Congress's 1974

---

[1] This duty was initially imposed on the Secretary of Health, Education and Welfare, but was subsequently transferred to the Secretary of Education in 1980. 20 U.S.C. § 3441.

amendments also "directed" the Secretary "to assign to the Office of the Blind and Visually Handicapped [of the RSA] ten additional full-time personnel (or their equivalent), five of whom shall be supportive personnel, to carry out duties related to the administration of the Randolph-Sheppard Act.'" 29 U.S.C. § 702 Note, Pub. L. No. 93-516, § 208(a).

Any vendor or SLA who is dissatisfied with the operation or administration of the Act may initiate the Act's administrative review procedures. For example, a blind licensee may

> submit to a[n] [SLA] a request for a full evidentiary hearing . . . If such blind licensee is dissatisfied with any action taken or decision rendered as a result of such hearing, he may file a complaint with the Secretary [of Education] who shall convene a panel to arbitrate the dispute . . ., and the decision of such panel shall be final and binding on the parties except as otherwise provided in [the Act].

20 U.S.C. § 107d-1(a). SLA's may initiate a similar review process:

> [w]henever any [SLA] determines that any department, agency, or instrumentality of the United States that has control of the maintenance, operation, and protection of Federal property is failing to comply with [the Act] . . . such [SLA] may file a complaint with the Secretary who shall convene a panel to arbitrate the dispute . . . and the decision of such panel shall be final and binding on the parties except as otherwise provided in [the Act].

*Id.* § 107d-1(b). The D.C. Circuit has held that these review procedures are mandatory prior to the initiation of a lawsuit because "the text of the Act manifests Congress's intent that aggrieved vendors pursue their administrative remedies before resorting to Article III adjudication." *Comm. of Blind Vendors of the District of Columbia v. District of Columbia*, 28 F.3d 130, 135 (D.C. Cir. 1994) (citing *Randolph-Sheppard Vendors of America v. Weinberger*, 795 F.2d 90, 101-04 (D.C. Cir. 1986)). The Court has further held that "'it seems unlikely, after establishing a specific dispute resolution system and conditioning judicial review on a final agency action, that Congress contemplated that an aggrieved party could . . . circumvent the system and seek de

novo determination in federal court.'" *Id.* (quoting *Randolph-Sheppard Vendors of America*, 795 F.2d at 103).

### B.  Factual Background

The five Plaintiffs in this action consist of two membership organizations and three blind persons who claim to have suffered particular injuries (and that they will continue to suffer injuries) because Defendants have "slashed the manpower Congress directed [to] be assigned to [the] Randolph-Sheppard program." Pls.' Opp'n at 7; Compl. ¶¶ 4-8.  Specifically, Plaintiffs allege that three employees were already assigned to functions related to the Randolph-Sheppard Act prior to the 1974 amendments.  Compl. ¶ 17.  Because the 1974 amendments directed the Secretary to assign an additional ten employees to functions related to the Act, Plaintiffs surmise that the RSA must assign a minimum of thirteen employees to implement the Act.  *Id.*  Effective October 1, 2005, the functions associated with the Act were allegedly reassigned to the newly created Training and Service Programs Division, which oversees other programs unrelated to blindness.  *Id.* ¶ 20.  As a result, Plaintiffs allege that Defendants "intend to staff the Randolph-Sheppard program with fewer than half the 13 full-time employees required by statute." *Id.* ¶ 20.

Although Plaintiffs do not identify their injuries in their Complaint, Plaintiffs' Opposition to Defendant's Motion describes several.  The first is based on the failure of certain federal agencies to comply with 34 C.F.R. § 395.33(b), a regulation requiring federal agencies to invite SLA's to respond to any of their solicitations for cafeteria contracts.  Plaintiffs identify seven instances since October 1, 2005, where this process was allegedly not followed:

- The Department of Defense solicited three military dining contracts but set them aside for small businesses or HUB-zone contractors and not blind vendors.

- The General Services Administration solicited three cafeteria contracts but failed to explain that blind vendors would be given priority.

- The Pentagon solicited one food court contract but failed to explain that blind vendors would be given priority.

*See* Pls.' Opp'n at 7-8. Plaintiffs argue that Defendants are to blame for the improper solicitations of these federal agencies because Defendants have not taken any action since October 1, 2005, "to fulfill [their] statutory duty to ensure that the state licensing agencies are permitted to compete for these opportunities." *Id.*

In addition to these seven solicitations, Plaintiffs identify two anecdotal examples of injuries they have allegedly suffered due to Defendants' failure to comply with the staffing requirements of the 1974 amendments. First, Montana Business Enterprises, Inc. ("MBE"), an SLA for the state of Montana, had a dispute with the United States Postal Service concerning certain Randolph-Sheppard vending facilities in or around 2003. Pls.' Opp'n, Ex. 10 ¶¶ 1-2, 9 (Aff. of Sam Hubbard). Although the RSA held a meeting on August 24, 2005, to discuss a proposed resolution between the parties, the RSA allegedly failed to hold another meeting prior to January 16, 2006. *Id.* ¶¶ 8, 10-12. According to Plaintiffs, the RSA's failure to provide additional assistance even though a resolution was not achieved demonstrates "the Department's staffing cuts" have resulted in "lost opportunities for blind vendors." Pls.' Opp'n at 9. Plaintiffs' second anecdotal injury is based on a request made by the Committee of Blind Vendors to the Department of Education on November 29, 2005, seeking advice as to whether a policy change implemented by an SLA was legal under the Act. *See* Pls.' Opp'n, Ex. 11 ¶ 12 (Aff. of Billie Ruth Schlank). As of January 17, 2006 (i.e., approximately seven weeks after the request was

made), the Department had not yet responded. *Id.* ¶ 13. Plaintiffs argue that this non-responsiveness is the result of a "[l]ack of adequate staffing." Pls.' Opp'n at 10.[2]

Plaintiffs have not initiated the mandatory administrative review provisions of the Act seeking to remedy their alleged injuries. Instead, Plaintiffs identify the source of their injuries as Defendants' failure to maintain thirteen employees working full time on functions related only to the Randolph-Sheppard Act. *See* Pls.' Opp'n at 11. Accordingly, Plaintiffs filed this action "to require Defendants to assign the required number of personnel to administer the Randolph-Sheppard program." Compl. ¶ 26.

C.   *Procedural Background*

Plaintiffs filed the instant Complaint on September 16, 2005. Defendants filed a Motion to Dismiss Plaintiff's Complaint on December 20, 2005. Defendants' Motion argues that Plaintiffs have no private right of action under the Randolph-Sheppard Act and that they have suffered no injuries because Plaintiffs lack standing to pursue these claims. *See* Def.'s Mot. at 1. Plaintiffs filed an Opposition on January 17, 2006, agreeing that the Randolph-Sheppard Act affords them no private right of action, but arguing that they may obtain relief pursuant to a writ of mandamus, 28 U.S.C. § 1361 ("[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff"). *See* Pl.'s Opp'n at 2-3. Plaintiffs further argue that they have standing to pursue their claims and that they meet all of the elements

---

[2] Plaintiffs' supplemental brief identifies four additional federal agency solicitations that they allege to have been improper. *See* Pls.' Suppl. Br. at 2.

necessary to obtain mandamus relief. *Id.* at 4-15. Defendants filed a Reply on February 7, 2006.[3]

Plaintiffs requested a hearing on Defendant's Motion to Dismiss on September 11, 2006. The Court held that Motion in abeyance and requested supplemental briefing by the Parties to determine whether any updated information should be considered by the Court. *See* [13] Order at 1 (Sept. 19, 2007); Min. Order dated February 6, 2008. Defendants filed a Supplemental Memorandum on February 29, 2008, providing the Court with additional legal authority. *See* Def.'s Suppl. at 1-7. Plaintiffs filed an opposition to Defendant's Supplemental Memorandum on March 10, 2008, arguing that Defendants' supplemental legal authority does not undermine Plaintiffs' arguments.

## II.  LEGAL STANDARD

Defendants have brought their Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See* Def.'s Mot. at 1. Because the Court finds that Plaintiffs lack standing to assert their claims pursuant to Rule 12(b)(1), it does not reach the merits of Plaintiffs' claims under Rule 12(b)(6). *See Bates v. Rumsfeld*, 271 F. Supp. 2d 54, 61 n.13 (D.D.C. 2002) ("[b]ecause the Court finds that plaintiffs do not have standing to assert their claims, it need not address the merits of plaintiffs' claims, as it would be required to do if it were granting the motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)) (emphasis in original omitted).

Under Rule 12(b)(1), the plaintiff bears the burden of establishing the court's jurisdiction, *see Am. Farm Bureau v. Envtl. Prot. Agency*, 121 F. Supp. 2d 84, 90 (D.D.C. 2000), and

---

[3] Defendants appear to have filed a second copy of their Reply on February 8, 2006. For purposes of resolving the instant Motions, the Court has only considered the Reply filed on February 7, 2006.

therefore the court's standing, *see Florida Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663 (D.C. Cir. 1996) ("[A] showing of standing 'is an essential and unchanging' predicate to any exercise of jurisdiction") (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  In ruling on a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a court must construe a plaintiff's complaint liberally, giving the plaintiff the benefit of all favorable inferences that can be drawn from the alleged facts.  *See Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004).  The Court may also "'consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'"  *Coalition for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (quoting *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)).

### III.  DISCUSSION

Mandamus relief is available where (1) a plaintiff has a clear right to relief, (2) the defendant has a clear duty to act; and (3) there is no adequate remedy otherwise available to the plaintiff.  *See In re Medicare Reimbursement Litig.*, 414 F.3d 7, 10 (D.C. Cir. 2005).  The Parties' briefing in this case focuses almost exclusively on the first of these elements. Defendants argue that Plaintiffs cannot establish a clear right to relief because they lack constitutional standing to advance their claims.  To establish the "irreducible constitutional minimum of standing," each of the Plaintiffs must show: (1) that he or she suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent; (2) a causal relationship between the injury and the challenged conduct; and (3) that the injury will likely be remedied by a favorable court decision.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  The

Plaintiff organizations in this case may also establish standing on behalf of their members when, among other elements, "[their] members would otherwise have standing to sue in their own right." *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977).

Defendants argue that even if Plaintiffs' injuries were to be considered concrete, particularized, and actual or imminent, Plaintiffs "cannot show that their alleged injuries . . . were fairly traceable to the[] staffing levels," Defs.' Reply at 7, and "cannot show that the[ir] injur[ies] [are] likely to be redressed by relief requested from this Court." *Id.* at 13. The Court agrees.[4]

*A.    Causal Relationship Between Injuries and Challenged Conduct*

Plaintiffs must establish that their injuries are causally connected to the conduct of the Defendants by marshaling facts, not "mere allegations." *Florida Audubon Soc'y*, 94 F.3d at 667. The facts must show that it is "substantially probable" that the violation of the 1974 staffing directive is "responsible for" their alleged injuries. *Crete Carrier Corp. v. Envtl. Prot. Agency*, 363 F.3d 490, 493 (D.C. Cir. 2004) (quoting *Florida Audubon Soc'y*, 94 F.3d at 664). Plaintiffs have failed to show that their alleged injuries are fairly traceable to the RSA's staffing levels for two reasons.

First, Plaintiffs overstate Defendants' responsibilities under the Randolph-Sheppard Act. While the Act is designed to enhance the economic opportunities of blind vendors–and Defendants certainly have the principal responsibility at the federal level with achieving that

---

[4] Because the Court finds that the first element of mandamus in this case is dispositive (i.e., whether Plaintiffs have a clear right to relief), it shall not address the second and third mandamus elements. Similarly, the Court shall assume without deciding that Plaintiffs have suffered or will suffer concrete and particularized injuries because the Court finds that Plaintiffs (1) cannot show that such injuries are traceable to the RSA's staffing levels nor that (2) increased staffing would necessarily redress such injuries.

9

goal–the Act does not authorize the RSA to resolve, acting alone, all issues arising between blind vendors, SLA's, and federal agencies. *See, e.g.*, 20 U.S.C. § 107a (describing the Secretary's various responsibilities). On the contrary, the Act authorizes vendors and SLA's to remedy violations of the Act by invoking its mandatory administrative review procedures. *Id.* § 107d-1; *Randolph-Sheppard Vendors of America v. Weinberger*, 795 F.2d 90, 103 (D.C. Cir. 1986) ("it seems unlikely, after establishing a specific dispute resolution system and conditioning judicial review on a final agency action, that Congress contemplated that an aggrieved party could . . . circumvent the system and seek *de novo* determination in federal court").

In this case, each of the alleged violations identified by Plaintiffs is susceptible to resolution pursuant to administrative review. For example, Plaintiffs allege that federal agencies decided not to invite SLA's to respond to certain cafeteria contract solicitations in violation of the Act. *See* Pls.' Opp'n at 7-8. The vendors who could have been eligible for such contracts, as well as the particular SLA's that should have been notified of the solicitations, could have initiated administrative review of those decisions. *See* 20 U.S.C. §§ 107d-1(a), (b). Similarly, the SLA that had a dispute with the United States Postal Service, *see* Pls.' Opp'n, Ex. 10 (Aff. of Sam Hubbard), and the Committee of Blind Vendors that believed an SLA's actions were contravening the Act, *see* Pls.' Opp'n, Ex. 11 (Aff. of Billie Ruth Schlank), could have sought administrative review and, if their grievances remained unresolved, could have participated in an arbitration under the auspices of the Secretary of Education. *See* 20 U.S.C. §§ 107d-1(a), (b). Instead of seeking such review, Plaintiffs have filed this action claiming that the RSA's staffing levels caused their injuries. Because the Act establishes review procedures that do not impose an obligation on the RSA to independently monitor and mediate the types of disputes identified by

Plaintiffs, there is simply no basis for Plaintiffs' argument that a decreased number of employees assigned to the RSA is the source of their alleged injuries.

Second, Plaintiffs have not shown that the RSA's failure to intervene and remedy their alleged injuries is the result of an overburdened staff, as opposed to an RSA policy decision, employee apathy, incompetence, or any number of other reasons that are unrelated to the RSA's staffing levels. Plaintiffs' mere showing that certain federal agencies failed to solicit cafeteria contracts properly, or that Defendants failed to respond to requests for assistance within a several week or month period, fails to establish the requisite traceability between the RSA's staffing levels and Plaintiffs' injuries. *See Public Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1291 (D.C. Cir. 2007) ("[w]e conclude that [the plaintiffs] lack standing because the 'links in the chain of causation between the challenged Government conduct and the asserted injury are far too weak'") (quoting *Allen v. Wright*, 468 U.S. 737, 759 (1984)). Similarly, Plaintiffs' offer nothing more than speculation that any staff added to the RSA would be responsible for mediating the types of disputes identified by Plaintiffs as opposed to performing other Randolph-Sheppard Act-related functions. In the absence of such a showing, Plaintiffs cannot establish that a decreased number of RSA employees is the likely cause of their injuries. Accordingly, the Court finds that Plaintiffs' injuries are not traceable to the staffing levels of the RSA.

      B.      *Likelihood of Redress By a Favorable Court Decision*

Plaintiffs also lack standing because their injuries would not necessarily be redressed by a decision in their favor, as explained in numerous other cases where plaintiffs have pressed similarly tangential claims. For example, in *Talenti v. Clinton*, a plaintiff sought to force the

United States President and several other officials to withhold federal funds from Italy to discourage or prevent the expropriation and re-zoning of his Italian property without just compensation. 102 F.3d 573, 575 (D.C. Cir. 1996). The district court held that the plaintiff lacked standing because his alleged injuries would not be redressed by a decision in his favor. *Id.* at 577. The D.C. Circuit affirmed, holding that it was "mere speculation" to assume that a judgment in the plaintiff's favor would at all ameliorate the plaintiffs' injury:

> When the plaintiff is not himself subject to the challenged government action or inaction, it is substantially more difficult to establish redressability. In such cases, the court's ability to redress the injury depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict.

*Id.* at 577 (citations and quotation marks omitted). *See also Weaver's Cove Energy, LLC v. Rhode Island Dep't of Envtl. Mgmt.*, 2008 U.S. App. LEXIS 9525 at *10 (D.C. Cir. May 2, 2008) (holding that even if the Army Corps' delay in processing the plaintiff's application constituted an injury, the effect of a favorable decision would not redress the plaintiff's injuries because it "would not alter the Army Corps' timetable for acting upon [plaintiff's] application for a [] permit"); *Renal Physicians Ass'n v. United States Health & Human Services*, 489 F.3d 1267, 1274 (D.C. Cir. 2007) ("a government policy cannot be founded merely on speculation as to what third parties will do in response to a favorable ruling").

In the instant case, Plaintiffs offer only speculation that increasing the number of employees in the RSA would necessarily result in a remedy for their alleged injuries. For example, Plaintiffs argue that Plaintiff Billie Ruth Schlank is a licensed blind vendor in the District of Columbia "whose pension fund is being depleted by the Defendants' failure to address the illegal conduct of the state licensing agency." Pls.' Opp'n at 12. Plaintiffs do not explain,

12

however, why increasing the staff of the RSA would necessarily remedy her injuries, as such a resolution requires speculation as to the actions of RSA staff who may or may not decide to intervene in such a dispute, or even if they did intervene, whether they would resolve the issue in her favor. Instead, the Randolph-Sheppard Act allows Billie Ruth Schlank to seek redress for her alleged injuries by requesting an evidentiary hearing or filing a complaint with the Secretary of Education, neither of which depends on the amount of staff assigned to the RSA. Accordingly, the Court finds that Plaintiffs lack standing to assert these claims. Because Plaintiffs cannot establish a clear right to relief without also establishing standing in this case, their lack of standing is fatal to their request for a writ of mandamus.

Finally, the Court finds that the Parties have extensively briefed the issues in this case (which includes supplemental briefs submitted to the Court), and that oral argument would not be helpful to resolving Defendant's Motion to Dismiss. Accordingly, the Court shall deny Plaintiff's Request for a Hearing on Defendant's Motion to Dismiss.

### IV.  CONCLUSION

For the reasons set forth above, the Court shall grant Defendant's [5] Motion to Dismiss and Deny Plaintiff's [12] Motion for a Hearing on Defendant's Motion to Dismiss. This case shall be dismissed in its entirety. An appropriate Order accompanies this Memorandum Opinion.

Date: June 24, 2008

                                           /s/
                                      COLLEEN KOLLAR-KOTELLY
                                      United States District Judge